May it please the Court, I am Robert Williams. I am the counsel for Mr. Cardenas. This is a Social Security matter. Mr. Cardenas was injured in an industrial accident, went through workers' compensation, was found 41% completely disabled, had a hearing, we appealed, went up to the District Court. The District Court said to the ALJ, you didn't, you know, what you did was wrong, and remanded back down to the District Court. When it went back down, I think on this record it's pretty clear, the ALJ said, tails we win, heads I get to do it again. And all we see in the second opinion is throwing out more information. Nothing that was new. This second opinion isn't really the product of taking new medical evidence or getting the opinion of a records review doctor who testified. But the things that the ALJ actually points to in his decision over and over again are the things that were there the first time, and that he cited to the first time, and he just beefed it up a little bit by pointing to, you know, this record or that record or this record Cherry picked out. The reasons are still insufficient. They were insufficient the first time, they're insufficient the second time around. There was a treating doctor, Dr. Lawler, who had an opinion. His opinion was based on the hip, the back, the continued pain, the need for what's going to be another hip replacement, and the future, because the prior two surgeries were insufficient, Mr. Cardenas would not be able to either do his old work, which is obvious, and I don't think it's disputed by anybody. Did you want to address why the ALJ's reasons for giving limited weight to that March 2010 opinion were not correct? The ALJ gave a number of reasons for rejecting it, including the work that was done after Lawler last saw Cardenas, including MRIs showing no real problems, and an opinion from Dr. Kelly showing no real problems. I don't think that that is a true and accurate representation of what those records show. The ALJ said, I'm going to discredit Dr. Lawler because he doesn't talk about an MRI that was performed a few months before. The MRI of the right hip was unremarkable. The MRI of the lumbar spine was mild. Dr. Kelly's opinion said no nerve compression. If I read it right, it's a little hard to understand. Lawler doesn't address it and says pain in hip, lumbar spine, neural compression. That was one of the ALJ's reasons. There were a number of other ones. Yes, but also Dr. Kelly notes that the MRI could miss things. There is no electromagnetic nerve conduction studies done here. So the ALJ could have gone a different way, but where there's two ways of reading the evidence, we defer to the ALJ, right? I do understand that, but what Dr. Lawler is being criticized for is not talking about that. If the ALJ wants to say his interpretation of those MRIs, or even if the ALJ wants to say that the subsequent medical examiner's interpretation of those MRIs is that there's no impingement and that there's no hip, I don't think that's problematic. I think what is problematic is when he's saying the reason I'm discrediting this doctor is this doctor didn't specifically discuss these particular MRIs. When you have a doctor who has a long-term treating relationship, when you look at the prior MRIs that existed when the hip replacement was done, you're not seeing a tremendous change in the objective evidence. Let me ask you, what was the critical date here for purposes of his disability? When did he have to establish that he was disabled? My recollection is that his date last insured was in 2008, is my base recollection right now. I haven't... At the end of 2008, right? I'm sorry, your Honor? At the end of 2008. Yes. I think that is when it is. So was Lawler opining about his condition at that time, or was he opining about his condition at the time he signed the report? That seems to be a question that the ALJ had, or at least the district court had, because there's a suggestion that is this an opinion about the earlier time, or is it an opinion about 2010? I think that it is a current opinion by Dr. Lawler, because he hasn't said that it was only related to the prior period. And in connection with the prior period, we already have in his medical records his opinion that Mr. Cardenas was unable to resume any work functions. And that was his 2008 opinion, if I recall correctly. It's not done out as a separate one. It's actually as part of the workers' compensation records, and I can give the court the site if it would like, but I would probably take advantage of the break to do so. So Lawler didn't write an opinion in 2008, right? In 2007, he recommended some work, and then he didn't see him again until October 2009, according to my notes. And actually, what I would say, Your Honor, is to correct my prior statement, is that Lawler opined in 2007 that Mr. Cardenas couldn't resume any work function, and it was Dr. Bowen, who I was thinking of in 2008, who opined that Mr. Cardenas was unable to return to his previous work. And then Dr. Bowen recommended vocational rehabilitation, and then there was indication, which I think the ALJ relied on, that Mr. Cardenas had not, in fact, accessed vocational rehabilitation and had no treatment over the past year. And, Your Honor, I think that that doesn't go against Mr. Cardenas in any way, and I think it also has to be recalled that that recommendation is coming within the context of the California workers' compensation system, and at this point in time, you have Mr. Cardenas continuing to be treated by opiates, which would be contrary to the policies under the workers' comp, and there's a strong preference to send him back to try to get somebody retrained. And, you know, that referral for new vocational training is independent, really, of whether or not the individual is, in fact, going to be able to go back to work. And Mr. Cardenas' pain and continued difficulties with movement and the requirement that he get up periodically and walk around and the requirement that he be mobile for 15 minutes out of every 90, none of that is being accounted for in that reference back to vocational training. Well, that's the, you're referring to Mr. Lawler's check the box form, which the ALJ rejected. The, well, if you take a look at the reasons for that, and it is something that we discussed, and I know it is a particular source of contention in the government's brief in response. You know, we, in going down and back through everything and picking apart exactly what it was that his medical source said, the only places where there was actual conflict were essentially issues of the amount of time in a day that he could sit, the total amount of weight that he could carry, whether he's a sedentary or whether he's light. But when asked to go back and review those opinions based on the medical evidence, their experts said on the other things he agrees. Right, but when he actually, if you're talking about Dr. Schmitter, when he gave his limitations, he said that Mr. Cardenas could stand and walk for four out of eight hours and there were no limitations on sitting. And then the subsequent testimony when he reviewed Lawler's check the box form was fairly ambiguous, if not incomprehensible. So when he actually gave his opinion about what Mr. Cardenas could do, he said, lift 20 pounds occasionally, 10 pounds frequently, stand and walk for four out of eight hours, no limitations on sitting, pushing or pulling, didn't need a cane, etc. That's it. SER 651 to 52. And yet he also says that he agrees with the other. You can't, yeah, but you can't really tell what he's saying. And he also, he says, Lawler's limitations were more restricted than mine. I mean, that second testimony clearly called out for some clarification as to what he was saying. But the ALJ could reasonably rely on Schmitter speaking, stating very clearly what he saw as being the limitations for Mr. Cardenas. I don't see why he wouldn't be able to rely on that. I don't think he can only take part of it without taking all of it. And I do think, if nothing else, the Court is quite correct. There is a ton of ambiguity in this case, and it should go back. You had Mr. Cardenas testifying with a translator who's not present and is appearing by phone, a medical reviewer who's not present, testifying by phone with evidence of clear confusion about which exhibits are which in connection with this. You had another separate argument, that is that the ALJ erred in discrediting Cardenas' pain testimony. Yes, Your Honor, and in connection with that, the ALJ really is only given two reasons, as I see it, when you actually go back and look at his specific statements. One is that there's mild objective medical evidence, which is not sufficient of itself. And then the other is essentially activities of daily living. But the things that he points to are all things that the Ninth Circuit has said in cases like Ravel's are not sufficient. You have to look at how it's being done. And there has been no building of a bridge between what he's doing and the amount of time it's taking him and the amount of time of a day that he spends doing it that he can translate that over into the work environment. These are all the same sorts of things that were found inadequate in a case like Ravel's, which was using the bathroom, being able to – Well, we said it didn't have to. It could still be used for adverse credibility whether or not it translated into the work situation. That was Molina said that. Well, I think there's a critical distinction because in that case, what that particular claimant was saying, as I recall the case, is that they were completely disabled. They couldn't do anything. And Mr. Cardenas has never claimed he can't do anything. He's claimed there are things he can do. He has to do – it takes him a long time. He needs to have breaks. He needs to walk around. He needs to be able to get up. None of the things that he's doing in his activities of daily living are inconsistent with that. There's nothing that undermines it. And his wife's testimony supports it, which is that he can do things for about 20 minutes. He tries to help. But it is not testimony of he's out there gardening. He's out there doing this. He's out there doing anything with any regularity or doing the types of tasks that will translate. And I'd like to reserve the final minute and 50 seconds. Good morning. Shea Bond on behalf of the Acting Commissioner of Social Security. I guess I – the point that I would like to make here is that the – as regards to Dr. Lawler's opinion, the ALJ accurately and reasonably discounted this opinion because Dr. Lawler did not have an accurate view of the claimant's condition during the relevant period. What's the relevant period? So the relevant period ended December 31, 2008. The agency had actually – or, excuse me, the claimant had actually filed two prior applications for disability, the last one being adjudicated on April of 2008. So we're talking about approximately an eight-month period of time during which the claimant had to prove that he first started to have disabling limitations. So when we look at the time period during which Dr. Lawler was treating the claimant, it ended in August of 2007 and then picked up again, I think, in October of 2009. So during that relevant period, Dr. Lawler had no idea what was going on with the claimant. But there were other – and that was part of the workers' comp treatment. But there were two other treating orthopedic doctors who did treat or perform an agreed medical examination of the claimant during 2008. And so you had – Dr. Miles conducted the agreed medical exam. He actually opined that the claimant was only precluded from very heavy lifting. And so that only envisioned a loss of the lifting capacity of about 25 percent. So that's completely consistent with what the ALJ found, which was an RFC for a less – a smaller range of light work. Then you had treatment from Dr. Bowen in February of 2008 and June of 2008. And so Dr. Bowen at SCR 341 says that the claimant actually needs to find some gainful employment because he can't return to his past relevant work, again, consistent with what the ALJ found. And then in June, Dr. Bowen said that the complaints were unchanged. He was actually permanent and stationary at that point. And it's Dr. Bowen who's concluded that claimant required no active treatment or current active treatment. So – and then he found that the claimant, while he couldn't do his past relevant work, he should undergo the vocational rehabilitation, which, when Dr. Miles saw the claimant again back in July of 2009, noted that claimant didn't do that and that he hadn't undergone any treatment. So – and then it's after that time that claimant returns to Dr. Lawler, which Dr. Lawler even admits it's after, quote, a long absence of time. So when the ALJ was giving the reasons for discounting Dr. Lawler's opinion the second time around, she really focused on these factors, which is that the opinion was issued long after the date last insured expired, that there was a long gap in the time between when Dr. Lawler had actually treated the claimant. It's not – you don't think it's possible for Dr. Lawler to have been opining what his condition would have been at the end of 2008? Well, I don't think his opinion is applicable. He doesn't say it. But the context of Dr. – But, you know, when did he do the surgeries? I can't remember all these. Pardon me? When did he do the two surgeries on his head? The first one was in 2006. I think it was, like, July, and then it was May of 2007. So – You did see him for a period of time after that, right? August of 2007 was the last date. So we have a considerable gap in time, and, again, it's – that period was actually covered by the agency's prior denial of the disability application because that was denied in April of 2008. So we're talking April of 2008 to December of 2008, Dr. Lawler hadn't seen him. Do you think Dr. Lawler could have had a meaningful opinion of his condition at the end of 2008 based on his experience with him? I don't think so, especially given the fact that you have the Dr. Miles and Dr. Bowen opinions, and those were also treating workers' comp doctors or an agreed medical examiner, and they were both orthopedists. And they actually concluded that the claimant, while he couldn't do his past relevant work, we're all in agreement with that, that he could train to do a lighter job. So I think under the facts of this case, this particular treating doctor, Dr. Lawler, did not have an accurate view of the claimant's condition during the relevant period. And I think the way that his responses in the questionnaire were worded clearly show that he was thinking about the claimant's condition probably closer to the surgery dates. Is that because he sits down at the bottom and he's asked about what he bases his opinion on? Yeah, it's that and the fact that the claimant came in and started complaining of new pain symptoms. He also talked about saying that there was the neurocompression, which didn't exist. I think it's Dr. Keller who said that wasn't accurate. There were the X-ray and the MRI findings. There was a normal right hip. There was mild degenerative changes in the lower back. That's all contradictory to what Dr. Lawler said. So that also shows that Dr. Lawler didn't have the accurate current, or I shouldn't say current, but the relevant understanding of the claimant's condition during the relevant period. Can you address the adverse credibility determination? I know in your briefing you thought it was waived because he didn't raise it to the district court, but given that the district court addressed it, we normally will review the opinion of the district court and consider it not waived. So can you address whether the ALJ erred on that point? Well, I would first point out that the claimant hasn't challenged all of the reasons that the ALJ gave for rejecting the credibility of the claimant, and so to that extent he has forfeited or waived, whatever the appropriate term of art would be. Excuse me, those conditions. You said there were only two reasons given. One was the mild objective findings, and the other was that it wasn't consistent with the ADLs. Were there other? Well, the ALJ also talked about, again, I think it was the gap in treatment. So its lack of treatment was also considered. Pardon me while I grab that. So, again, the ALJ is referencing, again, the long absence of treatment, particularly by Dr. Lawler. That's on 632. And, again, on 633 we have the lack of treatment with Dr. Lawler following the claimant's hip surgery. So the ALJ is describing, you know, what were the factors that she considered in assessing the viability of this claim. And so, as I just discussed, there was that large gap of treatment during the relevant period. And it's confirmed. I thought the gap in treatment was more related to Lawler, not to his credibility. Well, I think that it's part and parcel because the ALJ. But when you go to the ALJ's findings on credibility, he's talking about the two points that counsel made. Right. To 631. And then later the ALJ is talking about Dr. Lawler. Right. But the problem is that the claimant actually didn't really challenge in his brief the mild objective findings finding. So, and, again, we have the X-ray and the MRI that showed there were minimal findings as late as 2009. So you would think if a claimant was having a condition that was deteriorating, you would see something on those MRI findings, and there weren't. But I would also say that I don't think you can just isolate that one paragraph of the ALJ's decision when assessing the credibility. I think that you need to read the context. She says this finding is based on, you know, what are we to do? Right. But I would say you can't just look at that paragraph. I think we need to look at how the ALJ was analyzing this record as a whole. And it's very clear that she was persuaded by the fact that the claimant did not undergo treatment during the relevant period, which expired in 2008. And so that's the context in which this court should review the findings. And, again, I would point out that the findings about the ALJ. Well, if I don't buy your argument, if I don't agree with your argument, let me ask you this. Is there inconsistency between his activities of daily living and what he said is his pain and discomfort? Well, I would say the fact that, you know, the ALJ points out that he was taking walks, and if he's alleging that the problem with his hip is restricting his ability to walk, the ALJ had pointed out earlier that I think he said he was walking up to like an hour and a half. That was a mistake, correct? I'm sorry?  I don't believe that was a mistake. That comes from the prior hearing, if I'm not mistaken. But that's still all testimony from the claimant, though. I thought he testified at the hearing that it was a half hour. I am not positive on that. She makes reference to a half hour later in the decision. Regardless, the description of the claimant's ability to walk would be inconsistent with his claim that he is incapable of performing work activity. So it's the fact that he is claiming that he is so disabled by pain. He says he can't sit for more than 20 minutes without having to get up and walk around. The claimant makes those claims. That's what he says is his problem. So I'm trying to understand why his activities of daily living, if you take what he testified to, why that's inconsistent with his pain. That's why he was discredited. And then, if that doesn't hold up, then all you have left is the reliance on mild objective findings. Our case doesn't allow that. If it's solely objective findings, no, the case law does not allow that. But the evidence in this record showed that the claimant did not require treatment for his condition during the relevant period, and that is something that's a theme that runs through this ALJ's decision. Now, it might not appear in that one paragraph, but I do think that this Court needs to consider that when looking to the reasons that the ALJ assesses the claimant's statements. And the daily activities, again, they don't show that the claimant has to work consistent with work activity, but it just needs to show that the claimant's allegations are exaggerated. And I would also point out that during the workers' comp evaluation, there was the medical, I think agreed medical examiner, who said that this claimant tends to exaggerate his symptoms and pain. Did the ALJ mention that in her finding? That is, let's see. I'm not sure if that is specifically in the ALJ's findings on the second decision, but it is in the record. And then you did have Dr. Iguanato's opinion that the ALJ does discuss on 632 to 633, which also reinforces that the claimant had activities that seemed really fairly functional, is the way that Dr. Iguanato's described it at the top of 633. But I think this record as a whole shows that during that eight-month period of time, you have little treatment and the doctors who actually did provide the treatment concluded that this claimant should have trained for a lighter level job. He did not seek out any other treatment because he didn't need it during that time. Thank you. Thank you, counsel. We appreciate your argument. Thank you. Thank you. Just to address a couple of the items, the reasons that we just heard are not the reasons the ALJ gave. These are new reasons. These are different reasons than what the ALJ gave for discrediting Mr. Cardenas. I would also say he's not not in treatment in the intervening time period. He's on a series of medications, narcotics and muscle relaxants and everything else. To discredit him for a failure to seek treatment, there has to be some evidence in the record that there was some other treatment that was recommended and available to him. And there is no evidence of that in this record. It does show that he was medically compliant as well because he was told he needed to lose some weight. And to the extent that he testified about walking earlier, that's related to him losing 20 pounds in order to take pressure off of his hip following doctors' recommendations. Doing that is not going out and having a beautiful hike. That's part of rehabilitation. I will point to Treviso v. Berryhill at footnote 10, which does address this issue of you can't take reasons the ALJ gave for discrediting the doctor as reasons for discrediting the claimant if the ALJ didn't say those reasons apply to the claimant. And that wasn't done here. He is very credible in connection with what he says his limitations are because he is not saying all I can do is sit and watch TV. He is saying I need to take these kinds of breaks, and it's consistent with the arthritis found by their medical expert as well. Thank you. Thank you. We appreciate arguments on both sides. The matter is submitted. That ends our session for today and for the week. Thank you.
judges: Murphy, Paez, Ikuta